*533
 
 Dentó, J.
 

 There is no pretence, on the evidence,- for the' allegation of usury. Both witnesses who spoke of the loan! of §150 by Dewey to Webb stated that it was not made on the security of the bill; and the evidence is uncontradicted that Dewey acted in what he did as Webb’s agent, and not as the purchaser or holder of the paper. It is true that, in making title to the. bill, when pleadings were technical, the plaintiff would have set out an indorsement and delivery by Webb to Dewey, and by the latter to the bank, and would thus have stated, in effect, that Webb was at one time the holder, and then, inasmuch as he had §50 for his connection with its negotiation, it might be said that the bill was infected with usury. But, in inquiring at what stage of a transaction respecting a negotiable bill or note it became operative as commercial paper,successive indorsements are not necessarily regarded as separate transfers of the paper; but the inquiry is, in whose hands it first became available in a sense which would enable that party to maintain an action upon it against the prior parties. One who indorses for the accommodation of a prior party does not thereby become the holder of the bill, nor can he maintain an action! upon it until he has taken it up by paying the amount to
 
 a¡
 
 subsequent purchaser. The fact that the plaintiff placed the proceeds of the discount to the credit of Dewey was of no materiality, after it was shown that the latter acted in procuring the discount as the agent of Webb, and not as the owner of the paper.
 

 The defendants’ counsel relies upon the case of
 
 Steele
 
 v.
 
 Whipple
 
 (21 Wend., 103), as showing that, under circumstances precisely like those here disclosed, the paper would be usurious in the hands of the bank; and it must be admitted that the reporter’s note favors that conclusion. But, on looking into the case, it will be seen that the note overlooks the true point decided. A note had been discounted by a bank, an indorser on which, for the. accommodation of the maker, had been paid a sum of money for indorsing it; but the action was not by the bank, nor on that note. Another note had been given to the indorser, a part of the consideration of which was
 
 *534
 
 the premium which had been paid him for indorsing the first mentioned paper. That note he transferred to the plaintiff in the suit, and upon it the action was brought. The court, considering the exacting the premium for indorsing the first note to be in its nature usurious; and the note sued On having been given to the indorser in part to secure that premium, they held the last mentioned note usurious in the hands of the plaintiff The note of the reporter leads to the inference that the first note was held usurious in the hands of the bank. But in the opinion of the court, delivered by Judge Ooweh, it is expressly said that there was no usury in the bank. “ Had the original note,” he says, “rested there [in the bank], or in the hands of a
 
 Iona fide
 
 transferee of the bank, and either had brought an action pn the original note, or a substituted one, such action would lie.” The principle really decided has been questioned," if not overturned, by subsequent cases; but, as the point is foreign to the present question, it is unnecessary to pursue the subject. (See
 
 Barber
 
 v.
 
 Ketchum,
 
 4 Hill, 224;
 
 S. C.,
 
 7
 
 Id.,
 
 444;
 
 More
 
 v.
 
 Howland,
 
 4 Denio, 264.)
 

 The court, in the present case, left it to the jury to say whether Dewey became the holder of the note, by means of the loan to Webb, while it was in his hands; and they found he did not. I doubt whether the evidence would have justified the submission; but the defendants have no cause to complain of it.
 

 The defendants wrote their acceptance on the bill, and entrusted it to Webb while it was in blank as to the amount, relying upon his promise that he would not fill the blank for a greater sum than $1,000. He violated his promise, by inserting $1,200, and causing it to be negotiated for that amount. The plaintiff discounted it without any knowledge of the fraud, and paid the whole proceeds to the agent of Webb; and the question now is (if it can be said to be a question), which party is to suffer on account of the misplaced confidence reposed in Webb. It was the defendants, who, by entrusting their blank acceptance to the disposition of Webb, enabled him to commit the fraud. The plaintiff relied upon the defendants' genuine
 
 *535
 
 signature, attached to an instrument of a definite legal character. No want of caution is imputable to him, for it is the con- j' slant practice of business men to rely upon the genuine hand- ; writing of others, when found attached to commercial paper, without inquiring as to the circumstances under which it was ' written. Upon general principles, therefore, the defendants ! ought to encounter the loss, rather than the plaintiff. But the point has been settled by a long course of decisions. In a case in the Court of King’s Bench, decided in 1780, the action was upon a promissory note by the indorsee against the indorser. The note was made by one Galley, who, being desirous of raising money, had procured the defendant to indorse his name upon five engraved notes, in blank as to the date, amount and time of payment. Galley filled them up with different sums and dates, as he chose, and the plaintiff, a banker, discounted one of them, which was the note sued on. The defendant insisted that the signature of the defendant, when attached to the note, was a mere nullity, and that Galley had no power to change its character; and upon this position, he prevailed at ihe trial. But on a rule to show cause, the court determined that the defendant was liable as indorser. “ There is nothing so clear,” said Lord Mahtsfield, Ch. J., “as this point. The indorsement of a blank note is a letter of credit for an indefinite sum. The defendant said, 1 Trust Galley to any amount, and I will be his security.’ It does not lie in his .mouth to say the indorsements were not regular.”
 
 (Russell
 
 v.
 
 Langstaffe,
 
 Doug., 516.) The case is stronger than the present, in one respect, for it appeared that the plaintiff knew that the indorsement had been written on a blank note.
 

 A similar case is reported in 1 H. Blackstone, 313. The ' defendant wrote his name on a piece of paper entirely blank, and delivered it to Livesay & Co., for the purpose of drawing a bill of exchange for such sum, payable at such time and to such person and persons, as they should see fit. A bill for over £1,500 was accordingly written on the paper, the defendant’s name standing for the drawer, and Livesay & Co. becoming the acceptors, which was negotiated to the plaintiffs; and
 
 *536
 
 they were allowed to recover the amount, though aware at the time they-received the bill of the circumstances attending the signature of the drawer.
 
 (Collis
 
 v.
 
 Emett.)
 

 It did not appear, in either of these cases, that the blank paper had been filled up and negotiated in violation of the agreement between the party sought to be charged and the one to whom he 'had intrusted his signature; but in
 
 Schultz
 
 v.
 
 Astley
 
 (2 Bing., N. C., 544; 29 Eng. C. L., 414), a person desirous of raising money wrote his name across ten slips of stamped blank paper, and entrusted them to an advertising moneylender. Several of them were filled up by a stranger as bills of exchange for £500 each, with a drawer and indorser, in such manner that the blank signature stood for the name of an acceptor, and were negotiated to the plaintiff for a cargo of wheat. The defendant was held to be liable as acceptor, though he never received a farthing for the bills, and had no interest in or knowledge of the transaction upon which they were negotiated. The principle .was assumed to be, that a party is bound by his acceptance, written on a blank piece of stamped paper, to the extent of such sum as the stamp will cover. The court said, a blank acceptance was an acceptance of the bill which might be afterwards put upon it, and that it did not lie in the mouth of the acceptor to say that the drawing and indorsing of the bill were irregular. So, in
 
 Montague
 
 v. Per
 
 kins
 
 (22 Eng. Law. and Eq. R., 516), the defendant was sued as acceptor of a bill. It appeared that he had entrusted his blank acceptances to one Swinburn, to take up other bills which he had accepted for his accommodation. This was in and prior to 1840, and twelve years afterwards, in September, 1852, Swinburn wrote a bill of exchange for £200 on one of the blank acceptances, payable to his own order, and it was negotiated to the plaintiff. The jury found that the blank was not filled up within a reasonable time, and gave their verdict for the defendant. Leave was reserved to the plaintiff to move to enter a verdict in his1 favor; and it was held, after elaborate argument, that the defendant was liable on the acceptance, ánd judgment was given accordingly. The defendant’s counsel
 
 *537
 
 argued that the authority to Swinburn was to fill up the bill within a reasonable time. But the Chief Justice said,this was no't the case with reference to the rights of a
 
 bona fide
 
 holder for value. He added: “The rules applicable to the question of authority on this bill of exchange do not differ from those which ought to govern the question if it arose in the ordinary case between principal and agent. In the case of a blank acceptance,
 
 prima facie
 
 the person giving it gir es the person to whom it is given an opportunity to fill it up for the amount and for the time limited by the stamp laws. As between these two, there may be secret stipulations binding upon them, but not binding as between the public and the person giving the blank acceptance.” There are several other cases to the same general effect in the English books, and the principle, as has been remarked, seems perfectly settled. (See
 
 Cruchley
 
 v.
 
 Clarence, 2
 
 Mau. & Selw., 90;
 
 Atwood,
 
 v.
 
 Griffin,
 
 Ry. & Mood., 425.) The doctrine has been followed in this country.
 
 (Violett
 
 v.
 
 Patten,
 
 5 Cranch, 151;
 
 Putnam
 
 v.
 
 Sullivan,
 
 4 Mass., 45.)
 

 In this State, the courts have fully recognized the principle.
 
 Mitchell
 
 v.
 
 Culver
 
 (7 Cow., 360), and
 
 Mechanics' and Farmers' Bank
 
 v.
 
 Schuyler (Id.,
 
 in a note), were both cases of indorsements of notes in blank as to their date; and the dates were filled up, without the knowledge of the indorsers, of a day prior to that on which they were drawn and indorsed, so that the day of payment arrived earlier than could have been contemplated by the indorsers. The Supreme Court, on the authority of the cases to which I have referred, held the defendants liable, and laid down the rule that an indorsement on a blank note, without sum or date or time of payment, will bind the indorser for any sum, payable at any time which the person to whom the owner entrusts it chooses to insert.
 

 The defendants’ counsel relies upon several adjudications in the criminal courts in England, in each of which it was held that a person, having a blank signature of another which he was authorized to fill up -with a check or bill for a limited amount, arid who wrote one for a larger amount, was guilty of forgery.
 
 (Rex
 
 v.
 
 Hart,
 
 7 Carr. & P., 652;
 
 Reg.
 
 v.
 
 Wilson,
 
 
 *538
 
 2 Carr. & Kirwin, 527;
 
 Reg.
 
 v. Bateman, 1 Cox’s Cas., 186.) The difficulty which the doctrine of these cases presents, does not seem ever to have been urged by counsel or noticed by the court in the civil actions brought upon such paper, though it would seem incongruous to hold that any recovery could -be had upon an instrument which was in itself a forgery. The positions of the two classes of cases can only be reconciled by . holding the authors of the blank signatures estopped from setting up against a
 
 bona fide
 
 holder, who has paid value, that the paper was not his genuine act. A fiction of nearly the same kind must be resorted to, to sustain an action in favor of the
 
 bona
 
 fide-holder of negotiable paper which has been , stolen and put in circulation by the^thief. Such holder must make title through a felony, and yet nothing- is clearer than that an action may be maintained upon paper thus circumstanced. ' ^
 
 (Peacock
 
 v.
 
 Rhodes,
 
 Doug., 633;
 
 Miller
 
 v. Race, 1 Burr., 452.) The principle which lies at the foundation of these actions, I think, is, that the maker who, 1^ putting his paper in circulation, has invited the public to receive it of any one • having it in possession with apparent title, is estopped to urge the actual defect of title against a
 
 Iona fide
 
 holder. - Our statute fl 1 provides that the right of action of any person injured by any | | felony shall not, in any case, be merged in such felony, or be i "in any manner affected thereby. (2 R. S., 292, § 2.) This, • would enable the plaintiff to recover against Webb, though his act in filling up the bill was a forgery; but the provision does not seem sufficiently broad to enable him to recover against the defendants, who have not been guilty of any crime, and to whom the doctrine of merger would never have been applicable. But, if the two apparently hostile positions which the cases present are really incapable of being reconciled, I am in favor of sustaining those which uphold the civil action. The decisions of that class are so numerous and consistent, and the principle is so uniformly and confidently acted on by business men, that it would be eminently dangerous to depart from it. It is better that the wrongdoer should go unpunished until the legislature shall have provided a suitable penalty for his illegal act.
 

 
 *539
 
 The defendants’ counsel claim that a fatal error was commit' ted by the Supreme Court in allowing the complaint to be amended on terms. In the first instance, it did not contain any allegation to show that the bill had been negotiated to the plaintiff’s bank, though he named himself as president of the association. The intention to enforce a claim in 'favor of the bank was plain enough to a common intent, though the pleading was probably insufficient in the point suggested. The. court allowed the plaintiff to amend on payment of costs. Issue was then joined on the amended complaint, and the case was afterwards tried. The order was no doubt right; but, if it was not, the question being one of discretion, it would not be reviqwable here. The case of
 
 Davis
 
 v.
 
 The
 
 Mayor,
 
 &c.
 
 (4 Kern., 506), on which the defendant relies, has no application. There, after a trial, in which it appeared that the plaintiffs could not succeed on the evidence, another party, in whose favor ^the evidence disclosed that a right of action existed, was allowed to be introduced., and judgment was given in his favor. We held this to be.erroneous, on the ground that no discretion existed in the case.
 

 None of the defendants’ positions appearing to be well taken, the judgment of the Supreme Court must be affirmed.
 

 All the judges concurring,
 

 Judgment affirmed.