James H. McWilliams, Respondent, *v.* John M. Mason, Appellant.

Where the maker of a promissory note, by falsely representing that the payee is to advance to him the money thereon, procures a third party to guarantee the same, the payee taking such note in good faith, and for value, may enforce the guaranty.

The law imposes the loss upon the party who, by his misplaced confidence, has enabled another, on the faith of his obligation, to obtain money or property from an innocent third party.

Appeal from judgment of the Superior Court of the city of New York, affirming judgment entered on verdict. The action was brought upon a guaranty of the payment of a bond, made by one Carlile to one Townsend (the plaintiff's assignor), dated the 28th day of March, 1848, and conditioned to pay $1,500 within two years, with semi-annual interest. The guaranty was indorsed upon the bond, and executed simultaneously therewith. On the delivery of the bond and guaranty to him, Townsend delivered to Carlile a note for $231.74, principal and interest, which he then held against him, and assigned to one Strong, to whom Carlile had sold the same, a mortgage on which was due the sum of $1,293.55. Carlile realized on the mortgage only the sum of $1,075, out of which he paid Townsend the difference between the note and mortgage, and the bond and several other items of borrowed money, and expenses for taxes paid on the mortgaged premises by Townsend.

On the part of the defendant it was averred, and evidence was given on the trial tending to show, that he executed the guaranty, relying on the representations of Carlile, that Townsend was to lend him on the bond so guaranteed $1,500 in cash, for the purpose of enabling him to go into the milling business at some place in Ohio, and that Townsend knew that defendant made the guaranty for that purpose, relying on such representations. On the part of the plaintiff it was claimed, and evidence was given tending to show, that there was no negotiation or promise of a loan of money by

Townsend, on said bond and guaranty, but that it was agreed before the same were made that the consideration therefor should be the note and mortgage, and that Carlile was informed by Townsend of that fact.  As to the facts the evidence was conflicting.  The court, at the close of the evidence, was asked to charge the jury:  1. That if the jury believe that Mason entered into the guaranty for the purpose of raising $1,500 in money, to assist Carlile to go into business, and Townsend, instead of advancing that amount, or anything in money, gave Carlile only the Little mortgage and the $197 note, and did not communicate to Mason the fact that he was advancing the mortgage and the note, the plaintiff cannot recover anything.  2. That if the jury believe that there was an interview between Mason and Townsend, prior to the consummation of the transaction between Carlile and Townsend, and that Townsend then omitted to inform Mason what he had agreed to give Carlile upon the bond and guaranty, the plaintiff cannot recover.  The court refused so to charge, and defendant's counsel duly excepted as to each proposition.

The court, in its charge, presented the case to the jury in "three aspects."  The first of which was in substance, that if they found that Carlile applied to defendant to become a guarantor of his bond for $1,500, on a representation that Carlile wished the money for the purpose stated, and that Townsend would advance that amount on the bond of Carlile thus guaranteed, and that Carlile informed Townsend that he had made this application to defendant, and that defendant had agreed to become a guarantor for a loan of $1,500 in money, and that subsequently, without any communication with Mason on this subject, an arrangement was made between Carlile and Townsend, by which, instead of the money, he took the mortgage and note, then defendant Mason was not liable.  To this there was no exception.

The second aspect was in substance, that if the jury found that defendant, before executing the guaranty, was informed by Townsend of the arrangement between him and Carlile, that the consideration for the bond and guaranty was to be the mortgage and note, and executed the same with such

knowledge, then plaintiff was entitled to recover the whole amount of the bond so guaranteed; and to this there was no exception.

The third aspect was in substance, that if the jury should believe that Carlile did make the representations to defendant, that Townsend was to loan on the bond and guaranty $1,500 in money for the purpose stated, and thereby induced defendant to execute the guaranty, yet, if they found the fact to be that the agreement between Carlile and Townsend was that the bond and guaranty should be given for the note of Carlile and the Little mortgage, and that there was no agreement that Townsend should advance or loan money on the bond and guaranty, and that he took the same in pursuance of the agreement, and "acted in perfect good faith in taking the guaranty and bond without any notice of misrepresentation on the part of Carlile, or reason to suppose that there was any," but believed in good faith that the arrangement and the nature of it was understood by defendant, then plaintiff was entitled to recover what he actually advanced on the bond and guaranty, which would be the amount that Carlile realized on the mortgage, or if the jury found that the mortgage was in fact worth the whole amount secured by it, then the amount thereof with interest. To this part of the charge the defendant excepted.

The jury found a verdict for the plaintiff for the amount of the mortgage, with interest.

*J. W. Edmonds,* for the appellant.

*A. R. Dyett,* for the respondent.

DAVIS, J. There is no difficulty in determining under which "aspect" of the charge the jury found their verdict; and of course none in discerning what facts were found by them and what allegations were negatived. The case states that "the jury found a verdict for the plaintiff for $2,369.59, being the principal and interest of the mortgage on March 28, 1848, viz., $1,293.55, and the interest due thereon." If the jury had found the facts to be as hypothetically presented

by the first aspect of the charge, their verdict must have been, as directed by the court, for the defendant. The verdict, therefore, finds that it was not true that Carlile applied for and Townsend agreed to make a loan of $1,500 in money upon such a bond and guaranty, and that defendant made the guaranty to carry out that arrange\    ·, and that afterward Townsend and Carlile changed the agreement without defendant's consent, by substituting the mortgage and note for the money to be loaned. So if the jury had found the facts as supposed by the second aspect of the charge, then, in accordance with the direction, they must have found a verdict for the plaintiff for the whole amount of the bond, with interest; and, therefore, their finding has negatived the allegation of the plaintiff that defendant executed the guaranty with full knowledge that the consideration for the bond was to be the note and mortgage. The verdict is found under the third aspect, and it involves as the finding of the jury, these facts: that the arrangement between Townsend and Carlile was, that for the bond of the latter to be guaranteed by defendant, Townsend would assign the mortgage and give up the note of Carlile; that Carlile, to induce defendant to make the guaranty, represented to him that Townsend was to advance on the bond and guaranty $1,500 in money to enable Carlile to go into the milling business in Ohio; that Townsend received the bond and guaranty without any knowledge that such representations had been made by Carlile, but believing in good faith that defendant understood the actual arrangement between him and Carlile, and under which they were to be made; and, in pursuance of that arrangement, in good faith, assigned the mortgage and gave up Carlile's note for the bond and guaranty.

The court, at the trial, held that, upon these facts, the plaintiff was entitled to recover the amount actually advanced by Townsend on the bond and guaranty, to wit, the value of the mortgage assigned, at the time of making the assignment, with interest. As we have seen, the jury gave their verdict for that value only. It is not necessary to discuss whether this limitation of amount was right. If erro-

neous, it was so far to the benefit of the defendant, and he has no cause to complain. It is the law, that the rights of a surety are *strictissimi juris*, and, consequently, in any case where the surety can say, *non hæc fœdera veni* — this is not the precise contract I made — the law attaches to him no liability. This is the principle applied with uniform strictness in the numerous authorities cited by the learned counsel for the appellant. If it be applicable to this case, there is no reason why it should not afford protection to the defendant. But in this case, the agreement which the jury have found to have been made between the principal and Townsend, has been, as they also have found, carried out in good faith by the latter. The bond and guaranty brought to him are such as the agreement required; and there is nothing about them to indicate that they were not designed for the exact purposes of the agreement. It is not, therefore, the case of a departure from or change in any respect of the agreement between the principal and the party with whom he was dealing, without the knowledge or consent of the surety. Neither is the guaranty nor the bond changed from the exact form in which it was made, so that really, as it appears to me, the question in this case steers quite clear of the principles upon which the courts so vigilantly guard the rights of sureties. The real question is, which of two innocent parties shall suffer by a fraud perpetrated by another. Townsend contracted to sell his mortgage and cancel his note, upon receiving a bond from Carlile for their amount payable in two years, and guaranteed by defendant. Such a bond and guaranty, properly executed, are brought to him, and in good faith he receives them and transfers the mortgage and delivers the note. But it turns out, when the guaranty is sought to be enforced, that Carlile induced defendant to make it by a false misrepresentation as to the consideration Townsend was to give for it. This is no defense; because, in such case, the law imposes the loss upon the party who, by his misplaced confidence, has enabled another, on the faith of his obligation, to obtain the money or property of a third person, who has dealt in good faith, relying on such

obligation. The doctrine of estoppel steps in to prevent the assertion of such a defense, because it is more consonant with public policy as well as sound morals, that he, who by permitting himself to be deceived, has put it in the power of another to defraud an innocent third party, should himself suffer rather than the latter. It is upon this principle, as I understand it, that this court proceeded in *Van Duzer* v. *Howe* (21 N. Y., 531), rather than upon any distinctive rules applicable to commercial paper. In that case the defendants wrote their acceptance upon a bill and intrusted it to Webb, in blank as to the amount, relying on his promise that it should not be filled up for more than $1,000. Webb violated his promise by inserting a greater amount, for which the plaintiff, without knowledge of the fraud, discounted it, paying the proceeds to Webb. The court held that defendant must suffer the consequence of his misplaced confidence. One of the cases cited by Denio, J., in his opinion, is strongly illustrative of the principle. (*Montague* v. *Perkins*, 22 Eng. Law and Eq., 516.) In that case defendant intrusted one Swinburn with blank acceptances to take up other bills which he had accepted for his accommodation. Twelve years afterward Swinburn wrote a bill of exchange for £200 on one of the blank acceptances, payable to his own order, and it was negotiated to plaintiff. The jury found that the blank was not filled up within a reasonable time, and gave their verdict for the defendant. The plaintiff moved for leave to enter a verdict in his favor, and, after elaborate argument, the court granted the motion. It was argued that the authority to Swinburn was to fill up the bill within a reasonable time, but the chief justice said this was not a case with reference to the rights of a *bona fide* holder for value and that "the rules applicable to the question of authority on this bill of exchange do not differ from those which ought to govern the question if it arose in the ordinary case between principal and agent." (See opinion of Denio, J., in *Van Duzer* v. *Howe, supra*, and the numerous cases there cited by him, 4 Kern., 623.)

There was no error in refusing to charge as requested by

defendant's counsel. The first proposition involved nothing more than the effect of a failure on the part of Townsend to communicate to defendant the facts as to the consideration he was giving for the bond and guaranty. If Townsend was acting in entire good faith in the transaction, and in the belief that defendant knew its character and object, there was no occasion or obligation to communicate the consideration to him. The mere omission to do so would not affect his legal rights independently of any question of fraud or concealment. The second proposition presents the same idea strengthened by the suggestion of an interview in which the opportunity to make the communication might have been improved. The same answer applies. No legal results necessarily follow from the facts supposed by the requests, and their force as evidence tending to show bad faith or collusion, were, we must assume, rightly presented to and disposed of by the jury.

The elaborate arguments of the counsel for the appellant, upon the questions of fact involved in the case, are not proper for our consideration; but as they are based chiefly or to some extent on a supposed conclusive admission of the pleadings, it is proper to advert to that question. Obviously for the first time in the progress of the cause, it is now discovered and insisted that the important fact of Townsend's knowledge that Carlile was deceiving defendant, is admitted by the failure to deny it in the reply. The parties have litigated this question with great vigor through two trials, by witnesses and proofs, and through appeals reaching once before to this tribunal; and it may with some force be said, in the language of the counsel on another point, "it is error for a court to determine a case on a point not raised." If the point were fairly raised upon the pleadings, I should think it disposed of by *Sibley* v. *Waffle* (16 N. Y., 180). In that case the original pleadings were made at the time when a reply to new matter was necessary under the Code. There was no reply, but before the trial the amendment of the Code requiring a reply to new matter constituting a counterclaim only, was passed. This court held that the answer was at issue

by force of the amendment. *A fortiori* should that ruling apply to a case where there is a reply which is supposed to put in issue the new matter, and which certainly does so indirectly by averring facts totally inconsistent therewith.

I have looked carefully into the pleadings, and taking the whole of the answer and reply into consideration, I think it is a forced construction that can wring an admission out of them of the character claimed.

I am of opinion that the judgment should be affirmed.

DENIO, Ch. J. I think there was no error in the part of the charge excepted to, prejudicial to the defendant, or in the refusal to charge as requested.

The evidence showed that the defendant signed the guaranty at the time Carlile signed the bond, and that they were then delivered to or left with Mr. Townsend, with the defendant's knowledge and assent, without any communication between Townsend and defendant. It also appeared that the understanding between Carlile and the defendant was that the former was to borrow of Townsend $1,500; and that such was the transaction which, according to the understanding between them, the defendant was to guarantee as the surety of Carlile. If this understanding between Carlile and his surety was communicated to Townsend before he received the bond and guaranty, and he, notwithstanding such knowledge, advanced, not the money, but the assignment of the bond and mortgage and the note of Carlile, he ought not to hold the defendant responsible, because the engagement was diverted from the purpose for which it was given, with the knowledge of the party receiving it, which would be a violation of good faith. Carlile testified, in effect, that the negotiation with Townsend commenced by an understanding that a loan of money was to be made, and that Townsend knew that it was for that purpose that the defendant signed the guaranty. Townsend, as a witness, denied that he ever agreed to loan the money or ever entertained that proposition, and, substantially, that he had no knowledge or suspicion that there was any diversion of the defendant's undertaking

from the purpose for which it was intended. The part of the charge to which exception was taken affirmed that if the account thus given by Townsend was true, the plaintiff was entitled to recover the value of the Little mortgage; and if it was not worth as much as it was sold to Carlile for, then as much as the latter received upon the sale and assignment of it to Strong; but that he was in no event entitled to recover the amount of the note which Townsend had held against Carlile, and which he then surrendered, because it was worthless on account of Carlile's insolvency. As the plaintiff has not appealed, it is of no importance to examine the ground upon which a recovery was denied for that part of the bond which represented the amount of the note, or why the recovery should have been limited in any event to the amount for which Carlile disposed of the bond and mortgage. Surely a person, though he may be insolvent, has a right to pay or secure a debt which he owes, and procure a friend to become security for it, if he will consent; and in the absence of fraud or imposition, a man may lawfully sell and another may buy a moneyed security for the amount due upon it, and secure the consideration of the purchase in any way in which he may secure any other purchase. But the rulings against the plaintiff are, as I have said, immaterial upon this appeal; and as to the deduction to be made upon the mortgage in one contingency, for the further reason that the jury have found that the mortgage was worth all that the defendant sold it for.

The position, that if one sign a note, bond or guaranty running in terms to another person by name, as the creditor, and intrust it to a third person, to negotiate for his own purposes with the person so named as creditor, and the person so intrusted does deliver it to the party named as the creditor, upon a lawful consideration as between those parties, the creditor so receiving is bound to inquire further as to the understanding or agreement between the surety and the person for whom he became surety, at the peril of losing his security if it turns out that the party intrusted has violated the promise of his surety, cannot be sustained. It would destroy all confidence in such transactions, and enable dis-

honest men to commit all manner of frauds.    The authorities cited in *Van Duzer* v. *Howe* (21 N. Y., 531), and the principle of that case itself, show that one who enables another to commit a fraud of this kind is the party to suffer, and not the innocent person who has taken the surety at his word; and are quite sufficient for the decision of this case.

The judgment must be affirmed.

All the judges concurring,

Judgment affirmed.