## ANDREW M. CAREY, APPELLANT, *v.* MORRIS S. MILLER, JR., RESPONDENT.

*Signature to note obtained by fraud — the party signing is liable to a bona fide purchaser.*

One who having an opportunity and power to ascertain, with certainty, the exact obligation he is assuming, relies on the statements of the person with whom he is dealing and, being under no actual physical inability to ascertain the tenor and effect of the instrument, executes, without reading it, a negotiable instrument, is estopped, as against a *bona fide* holder for value before maturity, from claiming that he intended to execute an entirely different instrument, and that the statements made to him were false.

The law in such case imposes the loss on the party who, by his misplaced confidence, has enabled another on the faith of his obligation to obtain money or property from an innocent third person.

APPEAL from a judgment dismissing the plaintiff's complaint, entered on the report of a referee.

*Henry T. Utley*, for the appellant

*George W. Smith*, for the respondent.

TALCOTT, P. J.:

The case in this action was submitted at the last General Term. The action is brought to recover the price of a mare sold by the plaintiff to the defendant in July or August, 1876, at the town of Augusta, in Oneida county, upon the ground that the defendant had passed to the plaintiff in payment for the agreed price of the mare, a forged note, purporting to be the note of D. B. Mason and Charles Mason, for $175, dated June 19, 1876, payable to the order of Charles Rider and indorsed by the latter, and the question principally in controversy was whether the note was in fact forged, or whether it was a valid note against the Masons.

The two Masons purporting to have signed the note are farmers residing in the town of Vernon, where they carry on a farm jointly.

The action was referred to B. J. Beach, before whom it was tried, and who, amongst other things, reported as follows:

"On the nineteenth day of June, when they (the Masons) were together on their farm, a stranger accosted them and said he wanted to sell a mowing machine. They did not want to buy a mow-

ing machine, but they wanted to buy a cutter-bar for the machine they then owned, and the stranger said he had an adjustable cutter-bar, and he showed a sample of it with sections, and said it could be made to fit their machine, and if they were willing to pay the freight on one from Toledo to Oneida, they might have one free, because he wanted to introduce the cutter-bar in their neighborhood. They asked him what the freight would be and he said about a dollar, and they said they would pay the freight from Toledo to Oneida and would also give him a shilling each for a set of extra sections. The stranger produced a pen, ink and paper on which he filled up a printed form having blank spaces, so that the paper when filled up purported to be an agreement to pay freight on a cutter-bar and a shilling each for an extra set of sections. He asked Daniel B. Mason to sign, and Daniel supposing he was signing such an agreement as just stated, signed his own and his brother's name thus to an instrument hereinafter more particularly described. Charles Mason was present and consented to the bargain and the signature. The stranger went off with the paper or papers. He was well-dressed and a good talker.     *     *     *     *     *

" A few days later, a man named Rider sold at Deansville, in the neighboring town of Marshall, three promissory notes," among which was a note signed " C. and D. B. Mason, for $175," which was on a printed form having blank spaces filled in with pen and ink, and read thus :     *     *     *     *     *     *

" $175.                    " VERNON CENTRE, *June* 19, 1876.

Three months after date we promise to pay to the order of Charles Rider, one hundred and seventy-five dollars for value received, payable at First National Bank, Utica, New York.

                              C. & D. B. MASON."

And the referee further found as follows : "And this was the paper that, in fact, was signed by the Mason brothers, as above stated, when they supposed they signed an agreement about a cutter-bar." Rider sold the three notes to one Crackett to whom he was introduced by the landlord of the inn at Deansville as a person who was selling mowing machines and farming implements, and who had taken some notes which he wanted to dispose of, and Crackett bought the notes at a discount of twenty per cent. About a week

later Crackett sold two of the notes so purchased for a valuable consideration to the defendant Miller.

In the latter part of July, 1876, Miller purchased from the plaintiff the mare in question, at the agreed price of $170, and gave the note of C. & D. B. Mason aforesaid in payment for the mare, Carey agreeing to pay Miller the five dollars by which the note exceeded the price of the mare, when he should collect the note.

The plaintiff presented the note to the Masons the day after it matured, and they refused to pay it, "*declaring that they never had signed a note payable at the National Bank of Utica*," and one of them tore off the signature. Carey went the same day with the note thus mutilated, without the signature, which the Masons kept, to Miller and acquainted him with their refusal to pay the note, and requested Miller to take back the note and pay him the price agreed to be paid for the mare. Miller declined to do this and insisted that the Masons should be compelled to pay the note.

And the referee further finds as follows: "The note was the result of a fraud practiced on the Masons by the plausible stranger who called on them June 19, 1876. They had no idea of signing a note or of authorizing any note to be written over their signatures to what they supposed was an order for a cutter-bar. The stranger was a swindler and the note was a swindle in his hands. But the careless confidence of the Mason brothers in the plausible stranger contributed to the success of the swindle. Whether the written words and figures were inserted in the blanks of the printed form of note before or after the signature of the Masons was appended was immaterial. The note when offered for sale to Crackett bore every appearance of authenticity. The signature was genuine, and Crackett purchased the note without notice of the fraud practiced upon the signers. Before it fell due, Morris S. Miller, Jr., bought it of Crackett and paid full value for it without notice of the fraud. Before it fell due Miller paid it to plaintiff Carey as the equivalent of money, and Carey took it in good faith and parted with value for it before it was due, and as a conclusion of law the referee held that the paper in question, when it was transferred to Carey in payment for the mare, was in his hands a valid obligation on the part of the Masons to pay the sum of money named in it which he could enforce against them, and the plaintiff has no claim against the

defendant for the price of the mare, and the referee directed that a judgment be entered that the complaint be dismissed. We think the decision of the referee was correct according to the cases. That providing a promissory note bears the genuine signature of the obligors which has been intrusted to the holder, the obliger is bound in favor of a holder for value who has taken the note before maturity, and with no notice of any fraud in obtaining the signature, provided there was no actual physical inability to ascertain what the tenor and effect of the instrument purporting to be signed in fact was. (See *Whitney* v. *Snyder*, 2 Lans., 477.) Though it seems incongruous to hold that an instrument, which is in fact a forgery, should create an obligation against the person upon whom the forgery has been committed. The principle adopted seems to be as stated in *Mc Williams* v. *Mason* (31 N. Y., 294), that " the law imposes the loss on the party, who by his misplaced confidence has enabled another, on the faith of his obligation, to obtain money or property from an innocent third party." Even the fact that the instrument, taken as a whole, is a forgery, for the making of which the party who makes it might be convicted of a felonious forgery, the party whose genuine signature is affixed is nevertheless held liable in favor of a *bona fide* holder for value. (*Van Duzer* v. *Howe*, 21 N. Y., 531; see also *Schultz* v. *Astley*, 29 Eng. Com. L., 655.) The leading features of this case seem to be like the case of *Chapman* v. *Rose*, where the defendant entered into a contract with one Miller to act as the agent for the sale of a patent hay fork and pulley, a contract was filled out by Miller and signed by both, also an order which was signed by the defendant for one of the hay forks and two pulleys, for which by the order the defendant agreed to pay nine dollars. These were delivered to the defendant. Another paper was then presented to the defendant for his signature which Miller represented to be but a duplicate of the order. The defendant without reading or examining it, signed it, and delivered it to Miller. The paper so signed was the note in suit for $270. The plaintiff purchased' in good faith before maturity, paying therefor $245. It was held that the plaintiff could recover on the note on the ground that " where one having the opportunity and power to ascertain with certainty the exact obligation he is assuming, yet chooses to rely on the statements of the person with

whom he is dealing, executes a negotiable instrument without reading or examination as against a *bona fide* holder for value, he is bound by his act, and is estopped from claiming that he intended to sign an entirely different obligation, and that the statements upon which he relied were false. To avoid liability he must show that he was guilty of no laches or negligence in signing."

We cannot understand how in the case at bar the fraud upon the Masons was perpetrated, as one of the Mason brothers took the order for the cutter-bar, and as they say read it aloud, and then signed it in the name of both. But immediately after the transaction it appears that the Masons suspected that the stranger was a dishonest man, and Charles Mason suggested to his brother that there might be a note, saying: " He will fill up a note and go to Vernon and sell it." Charles Mason also testifies that when the stranger wrote the paper, which it appears was written on the bottom of the wagon, that although he stood looking over the stranger's shoulder when he wrote it, he could not read what he wrote. David B. Mason testified: " I cannot swear that I knew what he was writing as he wrote ; cannot tell what he wrote ; I saw him write it ; cannot say but he wrote a note then ; I read what I signed — that was an order." He also states that, " there was space enough to write a note between where he left off writing the order and where I signed the signatures."

The referee has found as a matter of fact that the instrument signed was the promissory note in question, and whether the fraud was perpetrated by some ingenious device in folding the paper, or whether the signatures were intrusted to Rider, with a sufficient blank space above them in which to write a note, it all comes to this, that the signature of the Masons was obtained by a fraud by which they in fact signed an instrument not contemplated, or negligently intrusted their blank signatures to this stranger, and thus enabled him to commit a fraud upon an innocent party. We think, in view of what has been held in like cases, the referee came to the correct conclusion.

The judgment should be affirmed.

Present—TALCOTT, P. J., SMITH and HARDIN, JJ.

Judgment affirmed.