CARROLL S. PAGE, Respondent, *v.* JOSEPH KREKEY, Appellant.

Where a person, in contemplation of entering into a contract with another, procures from the latter a guaranty of performance on his part, in which the terms of the proposed contract are stated, and the contract when executed does not correspond to the terms stated in the guaranty, the surety is not bound; and this, without regard to the question as to whether the difference between the contract as stated and as made is material or not. As the obligation of the surety is *strictissimi juris* the courts will not inquire as to whether the alteration in the contract is or is not to his injury.

Plaintiff had been in the habit of shipping to one T., a tanner, calf skins to be tanned, under an arrangement that, unless T. elected to buy them at a certain price, he would return them to plaintiff when tanned or deliver according to his order. Defendant executed to plaintiff a guaranty to the effect that, if from time to time plaintiff should send to T. hides and skins, that the latter would not convert them, but would well and faithfully tan them, and if he did not buy and pay for them within a time agreed upon that he would deliver them to R., McA. & Co., New York city. Plaintiff thereafter shipped skins to T. under contracts which provided that in case of his failure to purchase and pay for the goods they should be delivered to the firm of M. & G. In an action upon the guaranty, *held*, that the change in the contract made, as to the party to whom and the place where the goods were to be delivered from that contemplated in the guaranty, discharged the surety.

Defendant claimed that he was an illiterate man, unable to read writing, and that he signed the guaranty when intoxicated, under false representations on the part of T. as to its character. On the trial, defendant testified that he could not read; he then called two witnesses and offered to prove that fact by them; this was objected to and excluded. The question as to defendant's ability to read was submitted to the jury. *Held*, that the exclusion of the evidence was error; that as defendant's own testimony, he being an interested witness, did not conclude plaintiff, the former had a right to fortify his testimony by that of other witnesses.

When testimony in corroboration of that of a party is excluded as cumulative or on the ground that the fact is no longer in dispute, for all further purposes of the trial the fact should be deemed to be conclusively established and a submission thereof to the jury is error.

*It seems* where a party who has actually executed an instrument is chargeable with negligence in attaching his signature, he is liable to an innocent third party who has acted to his prejudice upon the faith of the instrument, although the signature was procured by fraud.

(Argued February 3, 1893; decided February 28, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 26, 1892, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This was an action upon a guaranty set forth in the opinion, which also states the facts, so far as material.

*Edward. W. S. Johnston* for appellant. The exception to the guaranty being received in evidence, was well taken. (*Ellis* v. *McCormick,* 1 Hilt. 313 ; *Selden* v. *Myers,* 20 How. [U. S.] 506 ; *Trambly* v. *Ricard,* 130 Mass. 261.) The motion to dismiss was based upon the grounds that it appeared affirmatively that this contract of guaranty was signed under circumstances which did not justify recovery upon it, the testimony being undisputed that the defendant signed a paper which he was unable to read, which was not read to him and while he was in a condition of complete intoxication, and he never ratified it by any acts; its contents were misrepresented to him by Thinnes as being an application for a license; under such a state of facts, the defendant could not be held liable. (*Bedell* v. *Bedell,* 37 Hun, 421 ; *Dorsheimer* v. *Rorback,* 8 C. E. Gr. 46 ; 10 id. 516 ; *Ellis* v. *McCormick,* 1 Hilt. 313 ; *Johnson* v. *Hall,* 38 Fed. Rep. 258 ; *Jackson* v. *Hayner,* 12 Johns. 489 ; *Selden* v. *Meyer,* 20 How. [U. S.] 506 ; *Trambly* v. *Ricard,* 130 Mass. 261 ; *People* v. *Bostwick,* 43 Barb. 9 ; *Whitford* v. *Laidler,* 94 N. Y. 146 ; *Bookstaver* v. *Jayne,* 60 id. 150 ; *Benton* v. *Martin,* 52 id. 570, 574 ; *Grimwood* v. *Wilson,* 31 Hun, 215, 216, 217 ; *C. Ins. Co.* v. *Horton,* 28 Mich. 173 ; *Fenter* v. *Obaugh,* 17 Ark. 78 ; *Leach* v. *Nichols,* 55 Ill. 273 ; *Johnson* v. *Cook,* 73 Ala. 537 ; *Jones* v. *Austin,* 17 Ark. 498 ; *Briggs* v. *Ewart,* 51 Mo. 245 ; *Frohrich* v. *Gammon,* 28 Minn. 476 ; *Aultman* v. *Olson,* 34 id. 450 ; *Miller* v. *Sawbridge,* 29 id. 442 ; *Christie* v. *Blakeley,* 15 Atl. Rep. 874 ; *Wilson* v. *Miller,* 72 Ill. 616 ; *Barry* v. *E. L. Ins. Co.,* 59 N. Y. 587 ; *Walker* v. *Ebert,* 29 Wis. 198, 199 ; *Kellogg* v. *Steiner,* Id. 626 ; *Taylor* v. *Atchi-*

*son*, 54 Ill. 196; *Maxfield* v. *Schwartz*, 10 L. R. A. 606; *Mills* v. *Williams*, 16 S. C. 593, 599; *Gourdin* v. *Read*, 6 Rich. L. 497; 8 id. 230; *Mathews* v. *Baxter*, L. R. [8 Exch.] 132; *Knale* v. *Engren*, 8 Cent. Rep. 828; *George* v. *Tate*, 102 U. S. 232; *Bank of Ireland* v. *Evans*, 5 H. L. Cas. 931; *McGinn* v. *Tobey*, 62 Mich. 252; *Griffith* v. *Kellogg*, 39 Wis. 293; *Camp* v. *Carpenter*, 52 Mich. 375; *Burrows* v. *P. G. Co.*, 81 Ala. 255; *Kastner* v. *Pibilinski*, 96 Ind. 232; *Bidall* v. *Herring*, 77 Cal. 572; *Graham* v. *Wilson*, 6 Kan. 489; *Bush* v. *Breining*, 9 East. Rep. 778; *Mansfield* v. *Watson*, 2 Ia. 111; *Johns* v. *Fritchey*, 39 Md. 258; *Reinskopf* v. *Rogge*, 37 Ind. 207; *Phelan* v. *Gardner*, 43 Cal. 306; *Pickett* v. *Sutter*, 5 id. 412; *Mathews* v. *Baxter*, 42 L. J. Exch. 73; 21 W. R. 389; *Blakeley* v. *Blakeley*, 6 Stew. 502; *Hutchinson* v. *Tindall*, 2 Gr. Ch. 357.) A contract of guaranty is *strictissimi juris*, and is not to be enlarged or extended by implication or construction. (*Johnson* v. *Haberstro*, 7 N. Y. S. R. 225; *People* v. *Backus*, 117 N. Y. 201.) The terms of the guaranty must be strictly complied with, and any change of its terms releases the surety. (*Stewart* v. *Ranney*, 26 How. Pr. 279; *Leeds* v. *Dunn*, 10 N. Y. 469; *Paine* v. *Jones*, 76 id. 274; *Grant* v. *Smith*, 46 id. 98; *Miller* v. *Stewart*, 9 Wheat. 680; *Martin* v. *Thomas*, 65 U. S. 315; *Reese* v. *U. S.*, 76 id. 13.) The denial of defendant's request to charge the jury " that they had a right to find that the plaintiff was guilty of negligence in not inquiring of the defendant as to his signature," was error. (*M. & T. Bank* v. *Hazard*, 30 N. Y. 226; *Sims* v. *Rice*, 67 Ill. 88; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357; *Joy* v. *Diefendorf*, 130 id. 6; *Kavanagh* v. *Wilson*, 70 id. 177, 179; *Elwood* v. *W. U. T. Co.*, 45 id. 540, 554.)

*Philip G. Bartlett* for respondent. Defendant's motions to dismiss, for a verdict, and for a new trial were rightly denied. (*Kintz* v. *Peck*, 113 N. Y. 126; *Fargo* v. *Milburn*, 100 id. 96; *Sutter* v. *Vanderveer*, 122 id. 652; *Arthur* v. *Wright*, 57 Hun, 22; *Winchell* v. *Hicks*, 18 N. Y. 565;

*O'Neil* v. *James*, 43 id. 94.) Plaintiff established a cause of action. (*D., etc., R. R. Co.* v. *Burkard*, 114 N. Y. 197.) The misrepresentations of defendant's principal avail nothing against this plaintiff. (*Mc Williams* v. *Mason*, 31 N. Y. 294; *W. N. Y. Ins. Co.* v. *Clinton*, 66 id. 326; *Powers* v. *Clarke*, 127 id. 417; *Casoni* v. *Jerome*, 58 id. 315; Baylies on Sureties & Guarantors, 214; Burge on Suretyship, 218.) The evidence did not establish such intoxication as avoided defendant's obligation. ( 2 Pom. Eq. Juris. § 949; 7 Wait's Act. & Def. 168; *Bates* v. *Ball*, 72 Ill. 108; *Johns* v. *Fritchey*, 39 Md. 258; *Burrows* v. *Richman*, 1 Green, 233.) The testimony received showed no different value from that found, and was not entitled to consideration if it had. (*Evans* v. *Kneeland*, 9 Ala. 42; *Lasher* v. *Williamson*, 55 N. Y. 619; *Lafarge* v. *Halsey*, 1 Bosw. 171; 4 Abb. Pr. 397; Pom. on Rem. § 750; Baylies on Sureties & Guaranties, 409.) The guaranty was properly received. (*Kirkland* v. *Dinsmore*, 62 N. Y. 171; *Belger* v. *Dinsmore*, 51 id. 166; *Baker* v. *Ins. Co.*, 2 Hun, 402; 64 N. Y. 648; *Breese* v. *U. S. T. Co.*, 49 id. 132; *Ins. Co.* v. *Fletcher*, 117 U. S. 519.)

O'BRIEN, J. The judgment from which this appeal is taken was recovered upon a guaranty, signed by the defendant and sent to the plaintiff, a resident of Vermont, by mail. The plaintiff had business transactions with one Bernard Thinnes prior to the guaranty. The latter was a tanner in Brooklyn, and the plaintiff, a dealer in green calf skins, had shipped to him skins at various times to tan and, unless he elected to buy them at a certain price, then to return them, so tanned, to the plaintiff, or deliver them according to his order. The following is the instrument upon which the action was brought:

"BROOKLYN, N. Y. *March* 14, 1889.
"Mr. C. S. PAGE, *Hyde Park, Vt.:*

"I am well acquainted with B. A. Thinnes, tanner, of this place. I believe him to be a good tanner, honorable and straightforward in his dealings and attentive to business, and if you will from time to time send hides and skins to him, I

hereby guarantee that he will not convert or misappropriate them, but will well and faithfully tan them, and, if he does not buy and pay you for them within the time agreed upon between you, I agree that he shall deliver them at Rose, McAlpine & Co., New York City, N. Y.

"Notice of your acceptance is hereby waived.

"JOSEPH KREKEY,

"P. O. address, 248 Freeman St."

It was shown at the trial that the defendant was an illiterate man, who could not read nor write, except possibly to sign his name. That he signed the paper at the request of Thinnes when in a state of intoxication, and under the false representation that it was an application for a license under the excise law. The principal part of the instrument was in print, probably prepared by the plaintiff, or under his direction. At all events it was presented to the defendant by Thinnes, the representations as to its character were made by him, and when he procured the defendant's signature, he sent it to the plaintiff, who, so far as appears, never met or had any personal transaction with the defendant. The plaintiff's claim against Thinnes, exclusive of interest, was $2,122.79 for skins shipped to him under six written contracts, bearing various dates between May 1, 1889, and July 1, 1889. All of these contracts provided that in case of failure to pay for the goods they should be delivered to the firm of Myers & Gordon. The only question submitted to the jury was whether the defendant, in signing the paper, observed proper care and caution, or was chargeable with negligence. In determining the legal effect of this paper, and the obligation thereby created against the defendant, we must assume that he signed it when intoxicated, that he was unable to read it, that he was ignorant of its contents, and that he fixed his signature to it upon the false representation that it was an application for a license.

There can be no doubt that, as between the parties to this transaction, the instrument was void. It was also invalid in the hands of any person who received it with knowledge or notice of the circumstances under which the defendant's signa-

ture was obtained. Sometimes releases, discharges and other instruments are procured by the fraud of a third person, without the knowledge or participation in the fraud of the party to be benefited, who, nevertheless, will not be permitted to reap the benefit of a fraud, though he was himself innocent. The case of *Bedell* v. *Bedell* (37 Hun, 419) is an example of this class of cases. The decisions in these cases rest upon principles obviously just and reasonable. When the fraudulent act is not imputable to the person claiming the benefit of the instrument, upon the principle of agency, he is generally debarred from enforcing it upon the ground of the fraudulent origin of the paper and the fact that he has lost nothing upon the faith of it. Without examining all the cases cited by the learned counsel for the defendant, it may be assumed that in other jurisdictions the courts have held that in a case like this the instrument could not be enforced any more than if the signature of the defendant had been forged. That is the principle which is invoked in behalf of the defendant to relieve him from all liability, but it has not received the sanction of the courts of this state.

While it has been quite uniformly held here that an instrument procured by fraud, trick or artifice, or executed by a party in such a state of intoxication as to be incapable of consenting or contracting, is invalid as between the parties to the transaction, these facts do not always constitute a defense as against an innocent person, who is himself free from any fraud or negligence, and who has advanced money or property to another upon the credit afforded by an instrument like this. But even in such a case, the person who has signed the paper is not liable upon it unless it is found that he failed to observe proper care and caution and was chargeable with negligence in attaching his signature. If he actually signed the paper, though procured to do it by fraud, and is chargeable with negligence, he is liable to an innocent party who acted to his prejudice upon the faith of the instrument. Such cases are not governed by the rules applicable to the *bona fide* holder of negotiable paper procured by fraud, but by the equitable rule

that where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss. If the defendant is to be held liable in this case, it must be upon the principle that by his misplaced confidence in Thinnes, he enabled him to obtain property from the plaintiff, who is an innocent third party. (*McWilliams* v. *Mason*, 31 N. Y. 294; *Western N. Y. L. I. Co.* v. *Clinton*, 66 id. 326; *Powers* v. *Clarke*, 127 id. 417; *Casoni* v. *Jerome*, 58 id. 315; Baylies on Sureties & Guarantors, 214; Burge on Suretyship, 218.)

If this instrument had been a negotiable promissory note the defendant's liability to the plaintiff would depend upon the question of negligence and there does not appear to be any sound reason for a different rule in this case. (*Chapman* v. *Rose*, 56 N. Y. 137; *Whitney* v. *Snyder*, 2 Lans. 477; *National Exchange Bank* v. *Veneman*, 43 Hun, 241; *Fenton* v. *Robinson*, 4 id. 252.)

The general principle of law upon which the case was disposed of at the trial, and upon review at General Term was, in this respect, favorable enough to the defendant. The guaranty contemplated a contract between the plaintiff and defendant's principal. All the goods sent to Thinnes were in pursuance of contracts in writing. The instrument which the defendant signed guaranteed the performance of these contracts only in case they were drawn in accordance with its terms. It was contemplated that there should be a contract between plaintiff and the defendant's principal, but not a contract that in any respect differed from the terms of the guaranty. After the defendant became surety the terms of the obligation the performance of which he guaranteed were changed by the contract between the plaintiff and the principal. The defendant's undertaking was that if his principal did not buy the skins and pay for them, he would deliver them to Rose, McAlpin & Co. The contract subsequently executed and to which it applied bound the principal to deliver them to Myers & Gordon another party and at another place. The question is whether the contract guaranteed has

not been so changed as to discharge the surety. Suppose that the contracts had been drawn and in existence when the defendant signed the paper then, of course, the legal effect of the guarantee would be that the principal would perform the contracts. But if the plaintiff and the principal subsequently changed them by substituting Myers & Gordon for Rose, McAlpin & Co., then we would have a plain case of a guaranty by the defendant of a contract to deliver, at a certain place, changed by the parties to it by providing for delivery at another and different place. It seems to me that such a change of the obligation, to which the guarantee applied, would discharge the surety. What the defendant, by the paper, said to the plaintiff was that, if you will make a contract with my principal to send him hides and skins to tan, providing that he will tan them, with an option to buy, and if not, then to deliver to Rose, McAlpin & Co., I will be bound for the faithful performance of that contract, not for the performance of a contract to deliver at another place. Suppose that the contracts as made provided for sending to defendant's principal different property than hides or skins, or property in addition to them, would the defendant be responsible for default in its performance? It seems to me that where a party, intending to enter into a contract with another, prior to its execution secures from the other a guaranty of the performance of such contemplated contract, in which the terms upon which the surety is to be bound are specified, and the contract, when drawn, does not correspond to the terms of the guaranty the surety will be discharged from liability, for default in the contract as made. In such a case the obligation of the principal is different from that for which the surety became bound. This question seems to have been disposed of in the court below on the ground that the change was not material. But the answer to that is that the defendant's obligation is *strictissimi juris*, and he is discharged by any alteration of the contract, to which his guaranty applied, whether material or not, and the courts will not inquire whether it is or is not to his injury. (*Paine* v. *Jones*, 76

N. Y. 278; *Grant* v. *Smith*, 46 id. 98; *National M. Bank* v. *Conkling*, 90 id. 116; *Bangs* v. *Strong*, 7 Hill, 250; *Henderson* v. *Marvin*, 31 Barb. 297.)

The defendant was sworn as a witness at the trial and testified that he could not read. He also called two witnesses and offered proof by them to show that he was unable to read, which was objected to by the counsel for the plaintiff and excluded under exception. There was no other proof given upon this point. If the case had been submitted to the jury upon the assumption that the defendant was unable to read, and that fact had been conceded, the exclusion of the testimony of the two witnesses referred to would not have been material. The following passage from the charge of the learned trial judge in submitting the case to the jury will show that the fact was not conceded and the case did not go to the jury upon any such assumption, but it was still regarded as a question for them to pass upon. The learned judge, after stating that the question depended upon the negligence of the defendant, and that the burden of showing the absence of it was upon the defendant, and that before they could dispose of that question they must believe the defendant's story, proceeded as follows: " He is here testifying in his own behalf to save himself from liability, and unless you are satisfied his story is true, and believe that he did sign the paper without knowing anything about it and on the distinct false representation by Thinnes, that it was a mere application for a license, the plaintiff is entitled to a verdict.　*　*　*　You are not bound to take his statement, because he is interested in the result. He is here trying to escape liability which, upon the face of the paper, he is bound by. On the other hand, if you are satisfied he has told the truth, and has acted in good faith, then I say the question further arises as to whether he has further satisfied you that he was not negligent in any way in doing what he did. He says that he cannot read or write. He can sign his name, but he says he cannot read English, and that he cannot read this paper and did not know what it contained. ' *　*　*　As a general rule, where one person leaves

to another the preparation of a writing and takes his word for it as to what it contains, he cannot complain if it is not what he thinks it is, because he has selected the person to prepare the agreement, and if that person deceives him it is his own fault. But considering the circumstances surrounding this case, the inability of the defendant to read or write, if you believe he is unable to, or his inability to understand what he was doing, his general intelligence and all the surrounding circumstances, it is for you to say whether he is to be excused, or that he did under the circumstances what a prudent person would do."

The jury, under this charge, had the right to disregard the testimony of the interested witness and find that the defendant could read, and that he knew the contents of the paper. The general principle charged was undoubtedly correct, but the difficulty was that it permitted the jury to pass upon a question, in regard to which the defendant was not allowed to give all his testimony. The error in excluding evidence in regard to the ability of the defendant to read could have been cured by instructing them that they must assume that he could not, or that the fact was conclusively proven as claimed by the defendant. The defendant had a right, if the question was still open, to fortify his own testimony in any way that he could. His own statement would not conclude the jury, but that of other disinterested witnesses would, in the absence of any opposing testimony. The plaintiff's counsel would now be entitled to argue, if necessary to his case, that the jury found that the defendant was able to read the paper. As the case was submitted to the jury with this question unsettled, and for the jury to pass upon, the ruling excluding the testimony bearing on the point was error. Where testimony in corroboration of the party as to a material fact is excluded as cumulative, or upon the ground that the fact is no longer in dispute then, for all further purposes of the trial, the fact should be deemed conclusively established, and should not be submitted to the jury upon the uncorroborated testimony of an interested party. As there was an exception both to the charge and to the ruling the defendant is entitled to raise the question here.

For these reasons the judgment should be reversed and a new trial granted, costs to abide the event.

All concur (ANDREWS, Ch. J., and GRAY, J., on second ground in respect to error in excluding evidence), EARL, J., not voting.

Judgment reversed.