DR. KOCH MEDICAL TEA COMPANY, a Corporation, Respondents, v. MOSES H. POITRAS, J. E. Marion, and J. A. Tetrault, Defendants, J. E. Marion and J. A. Tetrault, Appellants.

(161 N. W. 727.)

**Principal — agent — contract — signed by agent and sureties — to and with company or principal — sale of goods — price of — payment.**

1. Where a medical company sends to a would-be agent or local dealer a contract of agency or right to sell, which includes an assumption by such dealer of the debt of a third party, and requires him to sign the same and to obtain the signature of sureties thereto, who, in consideration of the sum of $1 to them in hand paid by the said medical company, shall and do agree to become such sureties, the guaranty obtained will be deemed to be a direct contract with said medical company and the dealer to be its agent in obtaining the same.

**Contract of suretyship — obligee in — fraud of itself — or agent — execution of contract — by sureties — obtaining signatures — false representations — contract void — contents of — knowledge of — lack of.**

2. Where an obligee in a contract of suretyship or guaranty, either by the fraud of itself or its agent, obtains the execution of such contract by fraudulently inducing the signers to believe that it is merely a recommendation as to the honesty of the principal, such contract is void, even though it was not read to or asked to be read to the signers; one of whom was unable to read it on account of having broken his glasses and the other on account of being unable to read the English language.

Opinion filed December 30, 1916.    Rehearing denied March 17, 1917.

Action to recover upon a guaranty.

Appeal from the District Court of Rolette County, *C. W. Buttz,* J. Judgment for plaintiff.

Reversed.

Statement of facts by BRUCE, J.

This is an action to recover upon a guaranty for the performance of a certain contract for the purchase of medicines.

One Durocher had the right for certain counties for the sale of certain products of the plaintiff medicine company. He desired to give up the business, but at the time was owing the plaintiff $975.49 for goods furnished to him. The defendant Poitras, who, though a defendant in this action, seems to have moved from the state and not to have been served with process, was induced to take over the agency, and to enter into a written contract in relation thereto with the plaintiff company. The defendants Marion and Tetrault were also induced by the said Poitras and Durocher to sign the said contract as sureties, the same having been sent to Poitras by the company for the purpose of obtaining satisfactory security. The present action, though nominally against all of the defendants, is in fact against the sureties for the sum of $975.49, the old debt of Durocher's, and for goods sold Poitras after the execution of the contract, less some payments which had been made thereon, which exceeded the amount due for goods sold Poitras but were not sufficient to extinguish the Durocher debt. A verdict and judgment were rendered for the balance due on the whole account, from which the defendants Marion and Tetrault have appealed.

There is a claim that the account against Poitras was not properly proved, and an exception taken to the remarks of the court during the trial, but the main controversy is over the contract of guaranty, whether by executing it the defendants Marion and Tetrault made themselves liable for the debt of $975.49 which was originally owing from Durocher to the plaintiff company, whether in fact their principal Poitras had ever agreed to pay that indebtedness, and therefore whether they were in turn liable therefor, whether the original contract, which was signed by Poitras and for which it was claimed they had become sureties, had not been materially altered by the plaintiff after its execution, so that the same became void and both the principal and sureties released therefrom, and whether as a matter of fact the said Marion and Tetrault signed as sureties at all, but by fraud and artifice were led into signing a guaranty when all they intended to do and thought they were doing was to sign a recommendation or testimonial as to the honesty and reliability of the said Poitras.

The contract in question was as follows:

36 N. D.—10.

## This Agreement

Made this ....11th.... day of ....Feb.....190..9, between
DR. KOCH VEGETABLE TEA COMPANY, OF WINONA, MINN.,
party of the first part, and ..Moses H. Poitras.... of ... Laureat...
in the state of .....N. Dak......, party of the second part:

WITNESSETH, that for and in consideration of the promises and agreements hereinafter contained to be kept and performed by the party of the second part, the party of the first part promises and agrees to sell and deliver to the party of the second part f. o. b. at Winona, Minnesota, in such reasonable quantities as the party of the second part may from time to time require in his territory hereinafter described, all medicines, flavoring extracts, toilet articles, spices, and other articles manufactured and sold by it.

Upon the execution of this agreement the party of the first part shall mail to the party of the second part its regular printed price list of the goods manufactured and sold by it. All goods sold by the party of the first part to the party of the second part under this agreement shall be paid for by him at the price shown upon such list, and in making settlements between said parties reference shall be had to such price list, and such list shall fix the value and price of all such goods between the parties hereto finally and conclusively, and also as to the guarantors whose guarantee is part of this agreement.

The party of the second part agrees to sell the goods furnished to him hereunder in the count..ies.. of ..Rolette and Towner.... and state of ....North Dakota.........................................
.........................................................
or in such other territory as both parties may agree upon from the date hereof until the 1st day of March 19..10.., when this agreement shall terminate.

The party of the second part hereby agrees to keep a complete record of all goods disposed of in his said territory, and to make written reports of the same to the party of the first part upon blank forms to be furnished by it, such reports to be made at such times and in such manner as the party of the first part from time to time may require, and further agrees to pay the party of the first part for all goods furnished to him from time to time as hereinbefore provided in the following

manner: At the time of making each such report, he shall pay to the party of the first part one half of the total amount of cash received by him as shown by such reports, provided such amount does not exceed the amount then due from him for goods previously purchased by him from the party of the first part, but the time of making such payments or any of them may be extended by the party of the first part without notice to the guarantors hereon without prejudice to the interests of said first party.

At the expiration of this agreement the party of the first part agrees to enter into a new contract with the party of the second part, and, if this contract is not renewed, it will receive from him goods which it has sold to him and which he has left on hand, and will credit his account with the same at the price originally charged therefor, provided such goods are in the same condition as when first shipped and the freight charges thereon to Winona are prepaid. If they are not in such condition a reasonable deduction will be made by the party of the first part for putting them into marketable condition: Provided that both of the foregoing provisions of this clause of this agreement are made upon the express condition that the amount of business done by the party of the second part and his conduct of the same have been satisfactory to the party of the first part.

Upon the termination of this agreement, unless a new contract is made by the parties hereto, the party of the second part shall pay to the party of the first part the full amount of his indebtedness to it.

Either party hereto shall have the right to terminate this agreement at any time prior to the 1st day of March 19..10.., by giving sixty days' notice in writing to the other party of such termination.

The party of the second part hereby acknowledges that he is indebted to the party of the first part in the sum of ..975.$^{49}/_{100}$.... dollars, the same being the balance now due to it from *Alphonse Durocher* under a previous contract between it and him. In consideration of the execution of this agreement by the party of the first part and its release of its claim against said ....Alphonse Durocher.... arising as aforesaid, the second party hereby assumes and agrees to pay said indebtedness.

In witness whereof, the parties hereto have caused this agreement to be executed by the duly authorized officers of the party of the first part,

and by the party of the second part in person, the day and year first above written.

Moses H. Poitras.

Dr. Koch Vegetable Tea Company,
        By Carl Gericher Sec'y-Treas.

In consideration of the sum of $1 to us in hand paid by the party of the first part, and in further consideration of the execution by it of the above agreement, and the sale and delivery of its goods as therein provided to the party of the second part, we, the undersigned, jointly and severally guarantee to the said party of the first part, its successors, and assigns, the full and complete payment of all indebtedness of the party of the second part to the party of the first part arising under said agreement, according to the terms and conditions thereof, at the time and in the manner provided therein. This guaranty shall take effect at the date of the above agreement.

Two responsible sureties sign here.

J. E. Marion.
J. A. Tetrault.

This is to certify that I am well acquainted with the party of the second part to the above agreement, and know him to be an honest, sober, and industrious person, and I also know sureties to be responsible and trustworthy in every respect.

Signed as references by

A. Charlebois,
E. M. Jacobsen,
R. E. Rognas.


*Cuthbert & Smythe,* for appellant.

Where a company appoints a local dealer as agent for the sale of its goods, and such local dealer or agent, in order to consummate and as a part of the transaction, gives to such company a suretyship bond or contract signed by the agent and by two sureties, and which contract recites a nominal consideration, and the signatures of the sureties are obtained by fraud and misrepresentation as to what the instrument they are signing is, and also as to its effect, and even though it is not read to them, and they not having asked that it be read, and being unable to read themselves, such instrument is void as to them. 31 Cyc. 1219, ¶ C, 1221.

The instructions to the jury on the question of the alteration of the contract are so prejudicial to appellants that a mere casual reading of them is sufficient. The indebtedness which they were purporting to assume was no consideration for the execution of the contract. 32 Cyc. 56, 59; 2 Cyc. 151, ¶ B.

The authority of a person in whose hands an incomplete instrument comes, to fill in blanks, is confined to the insertion of only such things and parts as are necessary to make the instrument intelligible, and does not vest such person with authority to materially alter the obligation or liability of the surety. 2 Cyc. 161, 169, ¶ C, 195, ¶ 6, 216.

Any entries in a book or other permanent form, in the usual course of business contemporaneous with the transaction to which they relate and as a part of or connected with such transaction, made by persons authorized to make the same, may be received in evidence, when shown to have been so made upon the testimony either of the person who made them, or, if he is beyond the reach of a subpœna of the trial court or insane, of any person having custody of the entries and testifying that they were made by authority, identifying the handwriting, and also that they are true and correct to his best knowledge and belief.

This case is entirely lacking in any such proof of the account which the court allowed in and which went to the jury. Comp. Laws 1913, § 7909.

It is error for the trial judge to express or intimate, in the presence of the jury, what has been or has not been proved, or otherwise comment on the value of the testimony, hypothetically or otherwise, and such error alone is reversible error. Atlantic Coast Line R. Co. v. Powell, 127 Ga. 805, 9 L.R.A.(N.S.) 769, 56 S. E. 1006, 9 Ann. Cas. 553; Coffin v. Brown, 94 Md. 190, 55 L.R.A. 732, 89 Am. St. Rep. 422, 50 Atl. 567; Gerrard v. La Crosse City R. Co. 113 Wis. 258, 57 L.R.A. 465, 89 N. W. 125; Booren v. McWilliams, 26 N. D. 570, 145 N. W. 410, Ann. Cas. 1916A, 388.

*Flynn & Traynor,* for respondent.

Appellants cannot be allowed to try their case on one theory in the lower court and then present an entirely different theory in the higher court, abandoning the former and relying upon the latter. Delaney v. Western Stock Co. 19 N. D. 630, 125 N. W. 499; Casey v. First Nat.

Bank, 20 N. D. 211, 126 N. W. 1011; Crisp v. State Bank, 32 N. D. 263, 155 N. W. 78; 2 Cyc. 670.

The contract here was for a sale of goods in Minnesota, to be shipped into North Dakota. It is not a contract of agency. Dr. Koch Vegetable Tea Co. v. Malone, — Tex. Civ. App. —, 163 S. W. 662; Granite Roofing Co. v. Casler, 82 Mich. 466, 46 N. W. 728; Aspinwall Mfg. Co. v. Johnson, 97 Mich. 531, 56 N. W. 932; Norwegian Plow Co. v. Clark, 102 Iowa, 31, 70 N. W. 808; Ross v. Northrup, K. & Co. 156 Wis. 327, 144 N. W. 1124; Saginaw Medicine Co. v. Batey, 179 Mich. 651, 146 N. W. 329.

The original contract was direct between plaintiff and defendants for the sale to them of plaintiff's goods. Defendants were to obtain two sureties. They did so by securing the execution of the contract as such by appellants.

It matters not how or in what manner defendants obtained the execution of the contract by the sureties—the appellants—so far as plaintiff is concerned so long as plaintiff had no part in and was ignorant of how or under what circumstances the sureties executed the instrument. Saginaw Medicine Co. v. Batey, 179 Mich. 651, 146 N. W. 329; Metropolitan Loan Asso. v. Esche, 75 Cal. 513, 17 Pac. 675; McConnon & Co. v. Laursen, 22 N. D. 604, 135 N. W. 213; W. T. Rawleigh Medical Co. v. Laursen, 25 N. D. 63, 48 L.R.A.(N.S.) 198, 141 N. W. 64.

This court has held that a contract of guaranty, similar to the one here, is a good, valid, and enforceable contract, supported by good and sufficient consideration, even where the $1 mentioned therein was not paid, and even though the signature of the principal had not been proved, and the guarantors had not been notified of acceptance by the company. McConnon v. Laursen, 22 N. D. 604, 135 N. W. 213; W. T. Rawleigh Medical Co. v. Laursen, 25 N. D. 63, 48 L.R.A.(N.S.) 198, 141 N. W. 64.

The law with reference to authority to fill in blanks, and that the filling in of the same does not constitute an alteration of the instrument, is well settled. 2 C. J. 1242.

If one signs a bill or note with blanks not filled, and delivers the same to the proper party, such delivery is authority to fill in the blank spaces in conformity with the original agreement. The filling in of blanks

is a question of authority, and not one of alteration. This rule applies with equal force to sureties and guarantors. 32 Cyc. 67; 2 C. J. 1245.

But appellants were repeatedly notified by letters from plaintiff of their liability and statements of account rendered to the sureties. The appellants, with full knowledge thereof, made no objection and permitted plaintiff to go on furnishing goods to defendants in good faith and in reliance upon such guaranty. The appellants therefore acquiesced in the charge of the Doracher account to Poitras as part of their contract of guaranty. Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708; Porter v. Hardy, 10 N. D. 551, 88 N. W. 458; Friends v. Yahr, 126 Wis. 291, 1 L.R.A.(N.S.) 891, 110 Am. St. Rep. 924, 104 N. W. 997; Montgomery v. Dresher, 90 Neb. 632, 38 L.R.A.(N.S.) 423, 134 N. W. 251.

No "excerpts from account books" were admitted in evidence. The sales book was not a complete record of the entire account, but only a memorandum of the shipments alone, which shipments are positively proved by the original evidence represented by the orders, invoices, and shipping receipts. These, together with the ledger, the only original book showing the items, both debits and credits, made a continuous and conclusive chain of proof of the account by the best evidence. 17 Cyc. 377; State v. Stephenson, 69 Kan. 405, 105 Am. St. Rep. 171, 76 Pac. 905, 2 Ann. Cas. 841; 2 Enc. Ev. 621; McConnon v. Laursen, 22 N. D. 608, 135 N. W. 213.

"Even though remarks made in ruling on evidence are improper, the judgment will not be reversed where it is apparent that no prejudice resulted." 38 Cyc. 1320.

BRUCE, J. (after stating the facts as above). This opinion is written after a rehearing. The main question which is presented revolves around the following instruction to the jury:

"There has been some testimony offered and received in this lawsuit with regard to representations made by Mr. Durocher and Mr. Poitras to Mr. Marion and Mr. Tetrault with reference to whether or not this was simply a recommendation rather than a guaranty of payment. I say to you now you will pay no attention to that evidence. I am convinced now I should not have admitted evidence on that subject, because neither Mr. Poitras nor Mr. Durocher, under the evidence in this case,

were agents of the plaintiff in any respect in the getting of this agreement, and it doesn't make any difference what kind of representations they made to these men in order to get them to sign it,—that the plaintiff, not knowing anything about the matter, would not be bound by that at all; and the plaintiff having acted upon that agreement as signed in the form that it is in without any knowledge of any representations or misrepresentations made by Mr. Durocher or Mr. Poitras, if they did make any such, is an innocent party in this matter, and is not bound by any such representations at all, so you will pay no attention to those matters."

We think that, under the circumstances of the case, the above instruction was incorrect, and that a new trial should be ordered.

The learned trial judge, no doubt, proceeded under and sought to apply the general rule of law that "fraud practised by the principal upon the surety, . . . to which the creditor or his agent was in no sense a party, will not as a rule, affect the liability of the surety to the creditor." Spencer, Suretyship, § 55; note to 39 Ann. Cas. 501; note to 21 L.R.A. 409.

The case, however, which is before us is a peculiar one. At least the contract which is before us is peculiar. It bears upon its face the evidence of being cunningly drawn, and of an attempt on the part of a foreign corporation to obtain the services of agents, but at the same time to avoid responsibility for their acts.

Instead of the usual contract of guaranty which, under the earlier cases at any rate, requires a notice of acceptance to be binding (see W. T. Rawleigh Medical Co. v. Laursen, 25 N. D. 63, 141 N. W. 64, and note in 48 L.R.A. (N.S.) 199), it contained a direct contract between the defendants Marion and Tetrault and the medical company. This contract recited a consideration of $1 as passing between the said guarantors and the said company.

At the bottom of the document, as a whole, was a paragraph or provision by which some parties were to recommend the principal and the guarantors, and which was so closely connected with the guaranty itself that one might be easily misled into believing that when he was signing the one he was signing the other.

This contract, according to plaintiff's own testimony, is put into the hands of the would-be purchaser or new agent (Poitras), "with instruc-

tions about getting recommendations and sureties, and if he does that satisfactorily it is accepted."

Poitras then was acting in a dual capacity. He was not merely getting a guaranty for the proper performance of his own contract in regard to the purchase of the medicine, but for the payment of a past debt of Durocher's, which he had assumed and which had no real connection with that transaction, and which itself was several years old. He was, according to the terms of the contract of guaranty, paying into the hands of the sureties and for and on behalf of the plaintiff medical company, the beneficiary, the sum of $1. He was making a direct contract between them and that company. He was not even engaged in transmitting an offer from the sureties to the company which had to be accepted in order to become binding, but in making a final and consummated contract. This, indeed, we are justified in believing was the very purpose of the wording of this peculiar instrument. It was to avoid any possible defense that there was merely an offer of suretyship and which had not been accepted. See discussion in W. T. Rawleigh Medical Co. v. Laursen, supra.

Not only is this so, but the agency was ratified by the company. By shipping the goods and suing on the contract and guaranty, it ratified the payment of the dollar and the making of the direct contract.

Such being the case, the plaintiff was bound by and responsible for the fraudulent acts of Poitras and Durocher. If the defendants were induced to sign the guaranty on account of the false representation that it was merely a testimonial as to the honesty of Poitras, the contract was void. Note in 21 L.R.A. 410.

And this even though the defendants did not read it or have it read to them before signing. One of them did not have his glasses with him, so could not read. The other could not read English.

It was, at the most, for the jury to say whether they were negligent in not having the contract read to them, and whether the plaintiff suffered any detriment by that negligence.

Even if it had been read, the contract was so drawn, and the position of the clauses such, that they might easily have signed the guaranty, thinking that they were signing the recommendation clause only.

The plaintiff is hardly in an equitable position in this case, and it is on this theory only that the failure by an illiterate man to have a contract

read to him precludes a defense. It is on the equitable theory that "where one of two innocent parties must suffer, he whose act or negligence first makes the loss possible must bear the burden." Here we have a paper cunningly drawn, which contains a contract, a guaranty, and a recommendation, all so closely printed together that one might easily sign the one thinking that it was the other. Here, if the defendants' testimony is to be believed, the agent of the company tells the signers that the instrument is merely a recommendation. The defendants sign an original agreement of guaranty and a direct contract between them and the beneficiary. The consideration of this, among other things, is the sum of $1 given to them by the beneficiary. The agreement is made then, not for the accommodation of the principal only, but for that of the beneficiary; for he pays for it.

It is not a case where one is called upon to sign an instrument of a certain nature, and is sought to be held to a knowledge of all that it may reasonably contain, and that is germane to its subject. It is a case rather where one, by fraud and misrepresentation of the nature of the instrument, induces another to sign a totally different instrument than that which was contemplated by him. In such a case the fraud can certainly be pleaded in an action between the original parties to the contract. Schuylkill County v. Copley, 67 Pa. 386, 5 Am. Rep. 441.

We are not unaware of the case of Saginaw Medicine Co. v. Batcy, 179 Mich. 651, 146 N. W. 329. We are satisfied, however, that in that case the court failed to consider the reason for an effect of the consideration of $1 for the guaranty, and the fact that, if a binding contract is made, which shall bind the guarantor without further acceptance by the medicine company, someone must act for that company in the making of the contract, and that someone can only be the person who pays the money and obtains the guaranty.

But it is claimed that the defendant is precluded from asserting agency on the part of Poitras and Durocher on account of the fact that the theory of the case which was adopted by the trial court, and which was that such agency was not proved and was necessary for the defense, was acquiesced in by him.

The court, however, failed to realize that the agency had been proved, and that by the plaintiffs themselves, and the position of counsel was forced upon him by the erroneous rulings of the court.

It is true that, in seeking to have his evidence admitted, he largely accepted the theory of the court, but he really had no other option. He had to admit that, as far as he was concerned, independent proof of agency was not possible, as Poitras was absent from the state. Since the court had ruled that proof of agency was necessary on his part to the introduction of evidence of the facts surrounding the signing of the document, he was driven to the expedient of seeking to introduce it on another theory. The evidence, at any rate, was afterwards admitted, and agency having been proved, it was error for the court to instruct the jury not to consider it.

The judgment of the District Court is reversed and a new trial is ordered.

Goss, J. (concurring). I concur fully in what is said by Justice Bruce in the main opinion. But do not believe this reversal should rest upon the single ground of agency of the principal for the plaintiff in procuring this guaranty. The law should be announced upon other questions presented. Justice Bruce differs from the views herein expressed upon some of the questions discussed.

The defendants Marion and Tetrault answered separately, and by amended answers allege that they signed their names under the belief that they were signing a recommendation only, induced by the false and fraudulent representations of Durocher and Poitras and with no knowledge that they were signing a guaranty or assuming any liability or were sureties, and that their signatures thereto were obtained by deception and fraud. Also that "so much of said agreement as provided for the payment of the debt owing by Alphonse Durocher by said Poitras was fraudulently inserted in said agreement after the same was signed by defendant, and without his knowledge or consent by the said plaintiff or someone acting for or on behalf of said plaintiff." Further, "that at all times mentioned said Durocher and said Poitras were agents of and acting for said plaintiff."

Upon the issues so joined, trial was had. Defendants offered proof that their signatures were obtained by such fraud and deception, but upon objection that the same was "incompetent, irrelevant, and immaterial; not binding upon the plaintiff in that there has been established no agency on the part of Durocher or Poitras to make any

representations whatever in behalf of the plaintiff, and that any representations that they may have made would not be binding upon the plaintiff," and sustained by the court, said proof was limited to its bearing upon the question of material alteration. The court stated: "These representations that you purpose to prove, to the effect that they were just simply recommending him, are not material so far as the plaintiff is concerned unless they knew about it, or unless these people got the recommendations made,—unless you purpose to show that they were agents of the plaintiff."

Counsel for defendants' sureties stated that he could not prove agency, but afterwards withdrew that statement. The court allowed this proof in evidence as bearing upon whether the paragraph of the guaranty wherein Poitras assumed $975 of the debts of Durocher had been left blank as to both the amount in figures and also the words "Alphonse Durocher," twice written therein in ink in blank spaces in the printed form. In the former opinion of this court, not prepared by the writer, it was held that the defendants were thereby bound by the theory of the case to an admission that they could not establish agency, and upon that theory the judgment was affirmed. But upon facts developed from the record upon rehearing had, a majority of this court is satisfied that defendants are not bound by any such theory of the case upon trial, because there was no theory of case adopted and consistently followed throughout the trial. It is apparent that neither counsel nor court fully comprehended the questions of law involved in the offered proof under the issues presented by the pleadings, and both court and counsel went astray. This is apparent from the rulings during the trial, from the statements of counsel, and from instructions. Under these circumstances justice demands that the proper theory of the law under the defenses interposed be outlined herein. It must not be understood that any criticism of trial court or counsel is intended. There seems to be somewhat of a dearth of authority upon the questions presented. They are somewhat unusual, and it is not surprising that the real issues presented by the pleadings and proof offered were not fully comprehended offhand on trial.

This opportunity is taken to state that this court as now constituted has never knowingly lent its aid to the enforcement of such contracts as the one in suit, which bears upon its face sufficient badges of fraud

to indicate its intended use for that purpose, and as clearly constituting a written trap for the unwary, whether literate or illiterate. And the courts of this state, the attorneys, and litigants are informed hereby of what their rights should be when so entrapped. The answers are sufficiently broad to present the defenses of fraud and misrepresentation, agency and material alteration. And upon all of them an issue of fact for the jury's determination is presented by the proof.

It may be assumed, however, for the purpose of this decision, that plaintiff company is an innocent third person without notice of the fact that the guaranty was obtained of the sureties through the deceit, misrepresentation, and fraud of the principal Poitras, until after suit brought. Nevertheless the offered proof, wholly independent of any theory of agency of Poitras for the company, was admissible to show that when these sureties signed this purported guaranty they did so under the assumption that they were signing instead the recommendation as to honesty, sobriety, and industry printed as a separate paragraph immediately after the printed guaranty. The law as to this seems to be well established. The following is from the recent work of "Spencer on Suretyship & Guaranty," § 55, p. 76: "It seems, however, that if the surety signs by reason of the fraud of the principal as to the nature of the instrument of guaranty, he will be bound to the creditor only where his want of ordinary care and prudence made the deception possible." This authority cites Page v. Krekey, 137 N. Y. 307, 21 L.R.A. 409, 33 Am. St. Rep. 731, 33 N. E. 311, and Walker v. Ebert, 9 Am. Rep. 548, and note thereto (29 Wis. 194). Under these authorities an alleged surety may show that his signature was obtained through fraud or misrepresentation, or that he supposed he was signing an instrument of a different nature. While such testimony is not necessarily conclusive upon the creditor where the action is brought by the creditor against the surety, yet such proof made throws upon the creditor two burdens,—the first that of showing that he accepted and acted upon the guaranty presented to him, and without notice of the fraud, misrepresentation, or deception practised by the principal upon the surety. And when he has done this, he has not established his cause of action upon the guaranty. Secondly, he must further establish that, in reliance upon the purported guaranty, he has been damaged, and also prove the amount of his damage. This damage may be recovered

as upon the guaranty, but nevertheless the recovery sounds in damages, and the amount of such recovery must be limited to the actual damages sustained and proven. As illustrative; in this case the plaintiff sold goods to Poitras upon the strength of this guaranty, but said principal fully paid for all goods he purchased, and in addition paid a portion of the debt of Durocher to the company assumed by Poitras under the contract. Hence, under the portion of the guaranty relating to future delivery of goods, this plaintiff has not been damaged by any negligent act of these sureties in signing the guaranty. And plaintiff's recovery in any event against them must sound in damages, and be based upon the negligence of the sureties. Quoting from Page v. Krekey, supra; "But even in such a case [as at bar] the person who has signed the paper is not liable upon it unless it is found that he failed to observe proper care and caution and was chargeable with negligence in attaching his signature. . . . Such cases are not governed by the rules applicable to the bona fide holder of negotiable paper procured by fraud, but by the equitable rule that, where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss."

The facts in that case were on all fours with these before us, and numerous cases are cited. And in Walker v. Ebert, the Wisconsin court in an opinion by Chief Justice Dixon holds that the rule applies even to negotiable instruments under the law merchant, and the reasoning of these cases seems unanswerable. The principle is also sustained by Taylor v. Atchison, 54 Ill. 196, 5 Am. Rep. 118; Wait v. Pomeroy, 20 Mich. 425, 4 Am. Rep. 395; Burson v. Huntington, 21 Mich. 415, 4 Am. Rep. 497; Gibbs v. Linabury, 22 Mich. 479, 7 Am. Rep. 675. The cases cited in these opinions are Putnam v. Sullivan, 4 Mass. 54, 3 Am. Dec. 206; Nance v. Lary, 5 Ala. 370; Whitney v. Snyder, 2 Lans. 477; Veeder v. Lima, 19 Wis. 297; Thomas v. Watkins, 16 Wis. 550; Chapman v. Rose, 56 N. Y. 137, 15 Am. Rep. 401; McWilliams v. Mason, 31 N. Y. 294; Powers v. Clarke, 127 N. Y. 417, 28 N. E. 402; Baylies, Sureties & Guarantors, 214, and Burge, Suretyship, 218; to which might be added the English case of Lee v. Jones, 17 C. B. N. S. 482, 144 Eng. Reprint, 194.

Whether any damage is established by plaintiff's proof that, upon its approval of this written guaranty, it released Durocher and his

sureties does not arise upon the record and it may not arise upon another trial. Suffice it to say that Durocher acted jointly with Poitras in procuring these defendants as sureties, and was a joint party to and participated in any fraud perpetrated by the principal Poitras upon these sureties. Under these circumstances the purported discharge, if fraudulent, was not such, and Durocher and bondsmen would still be held to plaintiff under Durocher's bond, for which the one in suit was substituted, with the latter turning his agency or business over to Poitras. If the original bond is valid and because of fraud not released, it is difficult to understand wherein plaintiff has been damaged by these defendants becoming sureties. Without damages there can be no recovery. And the instructions to the jury, as well as the rulings during the trial, have erroneously foreclosed these defendants of this defense.

On material alterations the trial court instructed that, to constitute a material alteration and release, the sureties, the portions of the guaranty relating to assumption of a past indebtedness of $975, must have been in blank as to both amount and person named. This was on the theory that there was a delegation of authority to fill in said blank as to amount. With this we cannot agree. The amount was material. No theory of delegated authority to fill in the blanks applies. If plaintiff received this guaranty with the amount in blank as the proposal of the sureties, plaintiff cannot alter that proposal in any material matter, without the sureties' consent.

On the third defense, a question of fact of agency was sufficiently shown to at least require a jury's finding thereon. This guaranty was a substitute for an earlier one running to the company from Durocher, and upon which a liability had already accrued of nearly $1,000. An official of plaintiff, and one of its witnesses, has testified that, in line with his duty, he prepared this bond and forwarded it to Durocher for him to obtain sureties, looking toward such a substitution. The company obtained through Durocher's efforts new security for its old claims. In so doing they have taken a contract with the new sureties running directly to themselves, and, for a consideration of $1, paid the sureties by plaintiff. Any misrepresentation and fraud in obtaining this substitution and contract of indemnity, for which they have paid the consideration and procured through the act of Durocher or Poitras, is imputable to plaintiff if performed by him as their agent.

They cannot accept the profits and advantages of a guaranty for a past debt without responsibility for the method employed under these circumstances by one who must have been their agent in so acting. Somebody acted for them in this transaction, and that person must have been their agent in executing this contract between themselves and the sureties.

It is doubtful if this guaranty should be held to relate to more than the delivery of goods to Poitras in the future. It is elementary that sureties are favorites under the law, and that their liability will not be enlarged beyond the plain and certain import of the contract of guaranty. Am authorized to state that Justice Christianson and Chief Justice Fisk concur herein. Justice Bruce concurs in all except what is said on material alteration.