Daniel P. **RHEAULT**, d. b. a. Dan's *Oil* &
Service, Plaintiff and Respondent,

v.

**TENNEFOS CONSTRUCTION COMPANY,**
Inc., a North Dakota corporation, et
al., Defendants and Appellants.

Civ. No. 8705.

Supreme *Court* of North *Dakota.*

Sept. 1, 1971.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for defendants and appellants.

Ohnstad, Twichell & Breitling, West Fargo, for plaintiff and respondent.

STRUTZ, Chief Justice.

Tennefos Construction Company, Inc., William Collins & Sons, Inc., and Joe Mayo & Son, Inc., North Dakota corporations, the defendants herein, formed a joint venture in the summer of 1968 for the purpose of obtaining a contract with the North Dakota Highway Department for the construction of a portion of Interstate 29, the project for which they placed their bid, being designated as I–29–2(17)76, located near Gardner, North Dakota. The joint venture was the successful bidder for this job and was awarded the contract for construction of the project.

Subsequent to securing the contract, the joint venture entered into an agreement with one Bob Alexander, doing business as Northwest Construction Company, hereinafter referred to as Alexander, for the furnishing and delivering of certain foundation fill and material required on the project for which the joint venture had been the successful bidder.

Alexander previously had had a charge account with the plaintiff, but his credit had been cut off because of his failure to

make payments on his account. After Alexander had made his agreement with the joint venture, he went to the plaintiff and requested that further credit be extended to him so that he could perform his agreement with the defendants. The plaintiff advised him that he would have to secure a written agreement from the defendants guaranteeing payment of any sales made to him on credit by the plaintiff before such further credit would be extended. Alexander thereupon requested the defendants' joint venture to write a letter to the plaintiff so that further credit would be extended to him, thus enabling him to perform his agreement with the defendants. Pursuant to such request, the joint venture wrote the following letter to the plaintiff:

---

|                           |            | Box 1363    58103       |
| Area Code 701             | (A G C)    | 2504 Fifth Avenue South |
| Telephone 235–6661        | (Seal  )   | FARGO, NORTH DAKOTA     |

June 19, 1968

Dan's Oil and Fuel
413 West Business 94
West Fargo, North Dakota    58078

RE:  I–29–2(17)76
Cass County

Gentlemen:

Mr. Bob Alexander has requested that we make our checks payable jointly to your firm, Dan's Oil and Fuel, and to himself for all materials that he delivers to us on the above mentioned project.

At the present time we have an agreement with Mr. Alexander to do business as Northwest Construction Company of West Fargo whereby he has agreed to furnish us with approximately 5,853 C.Y. of foundation fill at a price of $2 per C.Y., which will make a total purchase from him in the amount of $11,706. Mr. Alexander has requested that we make all payments on the above mentioned purchase payable jointly to Dan's Oil and Fuel and Northwest Construction Company for the purpose of securing credit from you to enable him to deliver this material to us.

We hereby agree to the payments as noted above.

Yours very truly,

MAYO, COLLINS & TENNEFOS

[Signed]  TODD DELMORE
WITNESS

[Signed]  A. D. BROKKE
A. D. Brokke, Sponsor

I agree to the above stipulation.

[Signed]  BOB ALEXANDER
Bob Alexander DBA
NORTHWEST CONSTRUCTION CO.

[Signed]  TODD DELMORE
WITNESS

---

Alexander thereupon entered upon the performance of his agreement with the defendants. After delivering 4,009.3 cubic yards of the 5,853 cubic yards of the fill material which he had contracted to deliver to the project, he defaulted on his agreement. The defendants paid $8,018.16 for the material which actually was delivered

and made the payments in the following manner:

—$4,376.86 was paid by check to Alexander and to the plaintiff jointly.

—$466 was paid to Alexander and to Tennefos Construction Company, one of the joint venturers, for rental of a loader.

—$2,083.20 was paid jointly to Alexander and one Ken Michael, a private trucker who was hired by Alexander to haul for him on the contract which Alexander had with the defendants.

—$541.26 was paid jointly to Alexander and one William Geiger for royalty fees on material which Alexander purchased from Geiger for use on the defendants' project.

—$551.28 was paid jointly to Alexander and one Arnold Levos for royalty fees on material taken from Levos's pit and delivered to the defendants' project.

The plaintiff had extended credit to Alexander beyond the amount of payments which he received from the defendants on Alexander's account, and now brings this action for a claimed balance due him of $3,385.79 on Alexander's account.

The defendants assert that their letter to the plaintiff was only an assignment, and that they agreed to pay only any amount which they should owe to Alexander; that the contract which the defendants as joint venturers had with the State Highway Department required them to pay for all material which was used in the performance of that contract and for the rental of equipment used in connection with the project, and that the plaintiff's claim was subject to all equities and defenses which the defendants might have against Alexander himself; that Alexander used the credit which he received from the plaintiff for doing work for other contractors on projects other than that of the defendants and that the balance now claimed by the plaintiff as due him from Alexander includes a sum in excess of $1,700 incurred on the previous account prior to the time the defendants wrote the letter requesting extension of credit to Alexander.

The trial court awarded the plaintiff the sum of $3,386.79, with interest, which was the full amount due the plaintiff from Alexander on his account. The defendants take this appeal from the judgment entered, demanding trial de novo.

The first question to be answered on this appeal is the effect of the letter of June 19, 1968, written by the joint venture to the plaintiff. Was it an assignment, as contended by the defendants, or was it an agreement to guarantee the plaintiff, if he would extend credit to Alexander, that all checks for material furnished by Alexander to the defendants would be made payable to Alexander and the plaintiff jointly? The letter relied upon by the plaintiff stated that Alexander had an agreement with the joint venture whereby he agreed to furnish approximately 5,853 cubic yards of fill at $2 per cubic yard, making a total purchase from him of $11,706; that Alexander had requested that all payments on such agreement be made jointly to him and the plaintiff "for the purpose of securing credit from you to enable him to deliver this material to us."

An assignment is the transfer or making over to another of any property in possession or in action, or of any right therein. Black's Law Dictionary, Fourth Edition. An assignor is the person who assigns a right which he owns, and an assignee is the person to whom such right is assigned. Restatement, Contracts § 149(2), (3) (1932).

Here, money was due or to become due to Alexander from the defendants under the agreement which he had with them. But the instrument which is claimed by the defendants to be an assignment was not made by Alexander but by the defendants' joint venture, which owed Alexander the money. It is true that Alexander agreed to the arrangement for payment of his debt, but he did not assign any interest, right, or moneys which he would

have coming from the defendants to the plaintiff. He merely agreed that the defendants might make the checks payable to him and to the plaintiff jointly.

■ We find that the letter from the defendants' joint venture to the plaintiff, agreeing to make all checks due Alexander to Alexander and the plaintiff jointly, for the purpose of securing credit for Alexander with the plaintiff, was a contract of guaranty. Aluminum Cooking Utensil Co. v. Rohe, 43 N.D. 433, 175 N.W. 620 (1919). It was given to guarantee to the plaintiff, if he should extend credit to Alexander, that all moneys due Alexander from the defendants on credit extended would be paid by joint check to plaintiff and Alexander, up to the limit of the defendants' liability to Alexander as stated in the letter. The fact that a part of the payment due Alexander was paid to others to whom Alexander became obligated, such as royalty payments for the fill and payments made to other haulers hired by Alexander to help him haul, did not excuse the defendants from fulfilling their obligation to the plaintiff under the terms of the letter of guaranty.

We therefore hold that up to the limits of the guaranty as found in the letter of June 19, 1968, from the defendants to the plaintiff, which was consented and agreed to by Alexander, the one to whom the plaintiff extended credit in reliance thereon, the defendants are liable for credit extended by the plaintiff to Alexander in reliance upon such letter.

■ Included in the balance claimed due by the plaintiff on the Alexander account are several items which the defendants dispute. The defendants claim that some of the credit given to Alexander was used by him to perform work and labor for contractors other than the defendants. The plaintiff testified that he was unaware that the defendant Alexander was doing work for any contractors other than the defendants. We have examined the record and it does not disclose that the defendants ad-

vised the plaintiff that Alexander was doing work for others. The trial court found for the plaintiff on this issue and, in the absence of a showing by the defendants that the plaintiff advanced credit to Alexander knowing that he was using such credit for work on projects other than that of the defendants, we affirm the trial court's findings. The defendants asked the plaintiff to advance credit to Alexander up to at least the amount which they would pay Alexander under their contract with him. Since there was sufficient material furnished by Alexander under his contract with the defendants, the pay for all credits actually extended by the plaintiff in reliance upon the letter of guaranty from the defendants, the fact that Alexander failed to complete his contract with the defendants is immaterial and the fact that some of the credit extended may have been used on other projects without knowledge of the plaintiff will not justify the defendants' refusal to fulfill their guaranty to the plaintiff.

Another item to which the defendants make objection is the sum of $1,781.49 which was owed to the plaintiff by Alexander prior to the writing of the letter asking the plaintiff to extend further credit to him "to enable him to deliver this material to us."

■ The liability of one who guarantees the debt of another to a third person will not be enlarged beyond the plain and certain import of his contract of guaranty. Dr. Koch Medical Tea Co. v. Poitras, 36 N.D. 144, 161 N.W. 727 (1917).

■ What was the purpose of the letter of guaranty written by the defendants to the plaintiff? It was to enable Alexander to get credit so that he would be able to perform his agreement with the defendants and to furnish the defendants with the fill material necessary to complete their project. Nowhere in the letter did the defendants state that they *would* guarantee Alexander's past debts and liabilities to the plaintiff. They were guaranteeing only

that Alexander would not default on payment for credit extended to him so as to enable him to fulfill his agreement with the defendants. It would have been easy for the plaintiff to insist that Alexander's old account be paid before any more credit would be extended to him. But no mention was made of that old account except that no further credit would be extended to Alexander unless the payments for such credit extended would be guaranteed. Since no mention was made in the letter of guaranty given by the defendants to the plaintiff of any past-due accounts, we hold that such letter of guaranty merely guaranteed the payment of any credit which would be extended to Alexander after the giving of the guaranty and did not include past-due accounts owed by Alexander to the plaintiff. The liability of one who guarantees payment of the debts of another to a third person should not be enlarged beyond the clear import of the guaranty. The only purpose of the guaranty in this case was to secure additional credit to enable Alexander to perform his agreement with the defendants. Dr. Koch Medical Tea Co. v. Poitras, *supra*.

The defendants claim that the trial court erred in admitting ledger sheets produced by the plaintiff to show the amounts due from Alexander to the plaintiff from time to time. A Mrs. Casperson, witness for the plaintiff, testified that she was the bookkeeper for the plaintiff; that she personally keeps the books for the plaintiff's filling station; that in keeping such books for the service station use is made of sales slips which are turned in each morning, together with an adding machine tape of sales made the previous day, and that these then are posted in the ledger; that most of the posting is done by this witness as the regular bookkeeper. The ledger cards for Bob Alexander's purchases were identified by the bookkeeper who stated that entries thereon were made in the ordinary course of business. The defendants' objection to the introduction of the ledger sheets as exhibits was on the ground that no foundation had been laid for their admission and no showing had been made that the sales listed on the ledger sheets were used in the joint-venture project. The defendants further objected to the introduction of such ledger sheets on the ground that the witness was unable to state that she had observed the making of all of the sales represented thereon and that some of the sales slips were not signed by persons to whom the goods sold had been delivered.

The trial court overruled the defendants' objection to the admission of the ledger sheets, and the appellants contend that this was error. Our statute governing the admission in evidence of business records, § 31–08–01, North Dakota Century Code, reads:

"A record of an act, condition, or event shall be competent evidence, in so far as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

"2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

"3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission."

██ ██ We believe that the foundation was sufficient to justify receiving the exhibit in evidence and that it established a prima facie case ·for the plaintiff. The trial judge, acting as judge and jury, received the records in evidence, weighed them, and found them to be sufficient in probative value to establish a prima facie case for the plaintiff. As this Court stated in Interstate Collection Agency, Inc. v. Kuntz, 181 N.W.2d 234, 235 (N.D.1970),

"To be consistent with the legislative intent to broaden the use of business records as evidence as indicated by the adoption of the Uniform Business Rec-

ords as Evidence Act, such records when received in evidence and when unrebutted by the opposing party will be given prima-facie effect."

The only part of this record so received by the trial court which the defendants have attempted to rebut is that more than $1,700 of the amount shown to be due the plaintiff from Alexander was for a balance due on an old account, which predated the guaranty of the defendants made for the purpose of securing credit for Alexander. As we have pointed out above, the defendants' guaranty did not cover the balance due from Alexander at the time the defendants wrote the letter of guaranty, so that a balance, which the plaintiff's own business records show to have been $1,781.-49 at the time of the guaranty, must be deducted from the amount due the plaintiff.

For reasons stated in this opinion, the judgment of the plaintiff against the defendants is reduced by $1,781.49, the amount of Alexander's past-due account to the plaintiff; and as thus modified, the judgment of the trial court is affirmed.

ERICKSTAD, PAULSON, TEIGEN and KNUDSON, JJ., concur.